## THE MERCHANTS' AND PLANTERS' NATIONAL BANK *et al. vs.* THE TRUSTEES OF THE MASONIC HALL.

1. Under §4181 of the Code, which provides that "No supplemental bill need be filed in this state. All such matter shall be allowed by way of amendment. If new parties are necessary by reason of any matter thus set up in the answer, or by way of amendment, the court shall give such direction to the cause to secure a hearing to such parties as if a cross-bill or a supplemental bill had been filed," there was no error in allowing the amendment.

(*a*). Where a creditor has obtained execution against a bank which has been returned unsatisfied, an amendment to a pending bill against the bank to reach equitable assets, which sought to require the president to account for assets in his hands so far as to pay the debt, was not without equity, and was properly supplemental to the original bill against the bank.

(*b*). Where a national bank goes into voluntary liquidation, thus severing its connection with the United States government, it becomes subject to like proceedings as domestic corporations, and if its president had and held a fund liable to the payment of debts, a court of equity, at the instance of a creditor, could reach and appropriate the same to the payment of an outstanding judgment.

2. That the secretary of the complainant committed a felony in hypothecating the bonds to the bank, for the conversion of which the judgment against the latter was obtained, did not necessitate a prosecution on the criminal side of the court as a condition of maintaining the bill. That question was concluded by the judgment in the trover suit. But if not, the rule would be entirely inapplicable to the questions made by this bill between complainant and the bank or its president.

v 65—39

3. A proper amendment does not postpone, at law or in equity, the trial term of the cause. The matter of giving time or of continuing rests in the discretion of the court.

4. The reference of such a case as this to an auditor would have been fruitless and manifestly improper. It involved no question of account between the litigants.

5. Discovery may be properly waived by amendment at any time before answer filed.

6. There was no error in the charge of the court. It was a full and able exposition of the law governing the case.

7. The verdict under the law and the evidence could not have been other than what it was.

8. It does not sufficiently appear that the motive of plaintiff in error in appealing to this court was delay only, to authorize that damages should be awarded.

Equity. Amendment. Banks. Tort. Felony. Practice in the Superior Court. Auditor. Discovery. Charge of Court. New Trial. Practice in the Supreme Court. Damages. Before Judge POTTLE: Richmond Superior Court. October Term, 1879.

Reported in the opinion.

BARNES & CUMMING; W. W. MONTGOMERY, for plaintiffs in error.

J. S. & W. T. DAVIDSON; J. GANAHL; HOOK & WEBB, for defendants.

HAWKINS, Justice.

This was a bill filed by the Trustees of the Masonic Hall, in Richmond superior court, against the Merchants' & Planters' National Bank and Thomas T. Branch, its president, and John T. Newberry, cashier, to recover the sum of eight thousand two hundred and fifty dollars, and for the appointment of a receiver, upon a judgment recovered by the Masons in 1878, against said bank, as damages in a trover suit upon which a *fi. fa.* had been issued and a return of *nulla bona* made. The bill charged that the bank

was indebted on said judgment; that the secretary and treasurer of the Masons, having in charge some nine thousand dollars in bonds belonging to said trustees, borrowed money from the Merchants' and Planters' National Bank on his individual account, and hypothecated said bonds as collateral security. He failed to meet his notes and the bank sold the bonds. The trustees sued the bank in trover and recovered as above. The bank had, on the twenty-second day of March, 1875, gone into voluntary liquidation, as provided in the national banking act.

On April 5th, 1875, at a meeting of the board of directors, and perhaps the last meeting ever held, the following resolution was adopted : " *Resolved*, That the president be instructed to pay a dividend on the capital stock, as fast as the assets are realized upon, at such times and in such amounts as in his judgment may be deemed desirable." The trover suit was begun in January, 1876. The president, Branch, paid out before the judgment, and after the suit was instituted, more than enough to pay the judgment, and after judgment, about six hundred dollars in money and debts due by stockholders to the bank for borrowed money, in the way of allowing them dividends, to an amount more than sufficient to pay the judgment. And after the judgment receipts were passed covering all debts so set off, whether before or after the judgment, and in the receipts the debts were treated as cash only, so far as appears in said receipts, one of which reads:

" Augusta, July 15th, 1878. Received from bank a statement in full of all my interest in ———— shares of the stock of said bank, which I have this day transferred back to the bank in final cancellation and settlement thereof."

Signed by the stockholder, first filling blank with the number of shares held by him.

There is no evidence that any money was loaned to stockholders after the judgment, nor does it appear when debts owed by the stockholders were created, the presumption being that it was prior to the time the bank went into

voluntary liquidation, March 22d, 1875, as the bank then ceased to do business.

Branch was its president—managed the whole business, he and his relatives and family owned a large majority of the stock, and he conducted its business the same as if it had been his own private concern; defended the trover suit and the bill applying for receiver, and had both carried to supreme court, and after affirmance refused to pay the debt, and otherwise delayed the Masons in the collection of their money.

The receiver appointed obtained no assets of the bank, and the complainants having the judgment with return of no property, a receiver with no assets, sought by an amendment of their bill to seek satisfaction by a decree against the personal liability of Branch, the president, and Newberry, alleging the conversion of the assets of the bank, and the misappropriation as trustees to their own use, as supplementary to the allegations in the original bill, which amendment was allowed by the court on the eighth day of October, 1879, to which, and the original bill as amended, the bank demurred. The bill was also amended by waiving all discovery but not waiving answer.

The bank demurred to the amendment on the ground, among others, that the same introduced a new cause of action. The demurrer was overruled and the defendant then, for the first time, filed an answer.

The evidence in the case showed that Branch was the controlling spirit of the corporation, owned a controlling interest, used and managed the same as suited his wish, keeping back from the stockholders a part of their dividends, saying he did so to meet the judgment of the Masons. There was no effort to reach the personal liabilty of the stockholders according to the charter provisions.

On the trial of the cause the jury found a verdict for the Masons against Branch for the full amount, without decreeing as to the receiver or injunction. He made a motion for a new trial, which was overruled, and he now

The Merchants' & Planters' National Bank *et al. vs.* The Trustees of the Masonic Hall.

asks a reversal of the court below in refusing said new trial.

1. The first ground of errror is the action of the court in allowing the amendment. Upon an examination of the original bill and the amendment allowed, we think the court committed no error in allowing the same.

The original bill charged that the bank, when it went into liquidation, March 22d, 1875, had, besides its capital stock of two hundred thousand dollars, a surplus of over sixty thousand dollars, and that it had assets sufficient to pay all debts, return to the stockholders their stock, and a premium of thirty dollars a share. That Branch was the owner and controller of a majority of the stock, and run the bank as though it was his individual bank, and not a corporation. "That nothing was done without his sanction, and nothing could be done without his approval, and that his control was so great that the bank and Branch had become convertible terms." That the bank, having severed its connection with the United States, the assets became a trust fund in the hands of Branch and Newberry for distribution among creditors and stockholders. That they had violated this trust, and had appropriated large sums of money to their own use and far more than sufficient to pay complainants' debt. That Branch, in settling with stockholders, only paid them par for their stock, telling them he could not pay more on account of the Masonic suit. That Branch, having no intention of ever paying complainants', remarked, after judgment, "the Masons have a verdict; I want to see how they will get their money. I think the verdict amounts to legal robbery." The bill also alleges the efforts of complainants to have the comptroller of the currency appoint a receiver for the bank, and his refusal. It prays for discovery, injunction, receiver, and under certain conditions, for relief *vs.* stockholders, for subpœna, "and that such other and further relief may be had and given to your orators as the case may require, and as may seem meet and proper."

The amendment filed October 8th, 1879, simply speci-ically charges Branch and Newberry, as trustees, in the winding up of the affairs of the bank, and sets out specifically the dates and amounts paid out in fraud of complainants' debt, charging the payment of over fifty thousand dollars since the beginning of the trover suit, and the payment of a sum sufficient to pay complainants' debt, paid to Branch himself, on July 15th, 1868, thirty days af-ter actual judgment *vs.* the bank. It charges litigiousness upon Branch and Newberry, and bad faith. The amend-ment prays in *terms* for a personal decree *vs.* Branch and Newberry for the debt, and for the expenses of litigation, and for general relief. Thus it will be seen that the amendment simply sets out in detail the facts alleged in general terms in the original bill.

Code, §4181, provides in part as follows: "No supple-mental bill need be filed in this state. All such matter shall be allowed by way of amendment. If new parties are necessary by reason of any matter thus set up in the answer or by way of amendment, the court shall give such direction to the cause to secure a hearing to such parties as if a cross or supplemental bill had been filed," and seems to cover this point.

Besides, it seems to us that if the allegations in the bill are true, the creditors of the bank could compel Branch to account for the assets so far as to pay their debts, for all the assets and property of the bank in the hands of its stockholders or president, or elsewhere, is but a trust fund to pay the debts and liabilities of the corporation, and the bank having gone into voluntary liquidation, and ceased its connection with the government of the United States, was subject to like proceedings as domestic corpo-rations or natural persons, and if its president had and held a fund liable to the payment of debts a court of equity, at the instance of a creditor, could reach and appropriate such assets in payment of a debt of the bank.

The second error, that the court sustained a demurrer to the plea, we think is entirely untenable.

The plea was, that inasmuch as the secretary and treasurer of the Masons, in disposing of the bonds to the bank, committed a felony, the Masons could not maintain this action, without prosecuting on the criminal side of the court, or showing some good reason why. The court below ruled, and we think correctly, that the judgment in the trover suit was a conclusion both upon the bank and Branch. Moreover, the plea would be bad in this controversy between the Masons and Branch.

If Branch had been guilty of a felony in the conversion of the bonds and the suit was against him, then there might be some ground to require a prosecution before suit ; but this is a controversy with the secretary of the Masons. We hardly think if A steals the horse of B and trades him to C, that B would be required to prosecute A before he could recover in trover his horse from C.

3. The plaintiff in error also insists that when the amendment was filed it was a new case, and that the then pending term was the appearance term, so far as the amendment was concerned, and they could not be held to trial then, and the court erred in not so holding. We are not aware of any rule in law or equity trials, where a proper amendment to the pleadings operates to postpone the trial term of the pending cause; but the court, in the exercise of a wise discretion, will give time, or continue the cause when material amendments are made, and the party is put, by surprise or otherwise, to disadvantage, and when substantial justice requires such postponement.

4. The court refused to refer the case to an auditor, on motion of the bank, to ascertain the assets of the bank. The receiver appointed by the law had failed to find any assets or property of the bank, and it was probable an auditor would have been equally as unsuccessful. There was no complicated account between the parties. The Masons had a fixed amount adjudged in the lower court

and confirmed here.   The assets of the bank, if any, were at the control of the defendants, and aside from that the Masons were asking, on the equity set out in their bill, a decree for a specific sum.

So we think the court was right in refusing to refer the case to an auditor.   We think also the certificate from the comptroller of the currency was admissible as evidence under the proof, and if error it was quite immaterial to the issue on trial.

5. The defendant offered his answer as evidence because the plaintiff had, by amendment, waived discovery, and had not so done in the original bill.   It appears that at the time the amendment was made in which discovery was waived, there had been no answer, plea or demurrer, and counsel had no intimation of what any answer would contain, or whether and what answer defendants would make.   We think, therefore, it was competent for the complainants to waive discovery in the amendment, and the defendants could not use their answer as evidence, under the rules in equity.

6. The charge of the court is a full and able exposition of the law governing the case, and the complaint against it is not well founded.   We, therefore, approve the ruling of the court in his charge to the jury.

7. Likewise the verdict of the jury.   It is fully sustained by the evidence ; in fact, we do not see very well how it could be otherwise.

8. The defendants in error here applied for damages, and whilst in a proper case we would not hesitate to award the same, when it appears that the cause was brought here for delay only ; but inasmuch as the defendants in error joined in the request for extension of time here on the argument of the case, and with great ability and learning consumed three hours to sustain the rulings of the court below, we must conclude that the plaintiffs in error had reason to hope and to expect a reversal of the judgment below, and their purpose was not delay only.

Judgment affirmed.